

DLA Piper LLP (US)
1251 Avenue of the Americas, 24th Floor
New York, New York 10020-1104
www.dlapiper.com

Tomasita L. Sherer
tomasita.sherer@dlapiper.com
T 212.335.4579
F 917.778.8612

October 25, 2017

**VIA ECF**

The Honorable Magistrate Judge Peggy Kuo
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Byron Chemical Company, Inc. v. Cipla Limited
Civil Action No. 16-cv-06201 (KAM)
**Motion for Supplemental Ruling on Proposed Protective Order**

Dear Judge Kuo:

As per Your Honor's October 13, 2017 ruling, we write to address the sample documents turned over by Defendant Cipla Limited's ("Cipla's") counsel to us under an Attorneys Eyes Only designation for purposes of this supplemental briefing. Attached hereto as Exhibit A is a copy of the email we received with attachments, which we are now filing under seal for Your Honor's review.

For all of the reasons given previously (ECF Document No. 29), and for the reasons stated below, the sample documents do not change Byron's position that a "Highly Confidential" or "Attorneys Eyes Only" designation option in this case is unnecessary, unsupported by law and should be denied. Byron's First Request for Production of Documents was served on Cipla's counsel in May 2017. As stated previously, now nearly 5 months later, despite representations made to the Court that "discovery is ongoing," and despite representations in Defendant's Responses and Objections, we have yet to receive a single piece of paper. The stalling should end now.

Byron therefore respectfully requests that in accordance with Your Honor's October 13 ruling, which denied Defendant's request for an Attorneys Eyes Only designation on information regarding customer names, types and total amount of product sold, and location of sale: (1) Cipla's supplemental request be wholly denied; (2) that Byron's proposed protective order, attached hereto as Exhibit B, be ordered as the operative protective order in this case;[1] and (3) that Cipla be ordered to promptly commence and complete its document production since depositions are scheduled to commence on November 20, 2017.

**Sample Documents.**

During oral argument on October 13, 2017, after Byron volunteered that it was not seeking per unit costs from Cipla, and after this Honorable Court ruled in Byron's favor that Defendant's request for an Attorneys Eyes Only designation on information regarding customer names, types, total amount of product sold, and location of sale was denied, Cipla's counsel represented to the Court – for the first time – that there were other documents and communications that it was concerned about sharing that purportedly required

---

[1] This order contains adequate protections for documents marked "Confidential," without unduly restricting Byron's ability to obtain full discovery and prepare its case.



a Highly Confidential designation. When Your Honor inquired further about the nature of those alleged additional documents and communications, Cipla's counsel stated that there were contracts and other documents responsive to Byron's discovery requests containing unspecified types of proprietary information that would necessitate the additional layer of protection. As this was the first time such documents and communications were claimed to exist, and were completely hypothetical in nature to Byron, this Court ordered Defendant's counsel to produce a sample of such a document to Byron's counsel for purposes of this supplemental briefing.

A review of the sample provided is puzzling at best. First, instead of providing a document responsive to Byron's discovery requests or an example of the type of proprietary information that Cipla claims it is trying to protect, Cipla's counsel provided an agreement and amendment "for the supply of finished formulations," that it states is "not relevant to the case," but yet purportedly, "a good example of the type of third party arrangements with restrictive confidentiality obligations." Next, counsel for Cipla states that they "could not locate an API Supply Agreement for production at this time without potentially violating its confidentiality provisions." This statement is confounding because: (a) they either located one, but are refusing to turn it over despite the Court's order to do so; or (b) they haven't located the type of agreement that they advised the Court justified an Attorney's Eyes Only Designation. Finally, Cipla's counsel then cut and pasted two confidentiality provisions it claims to have taken from a 2014 API Supply Agreement stating, "As you can see, among other restrictions, we are not permitted to disclose information concerning the customer's sales, suppliers, distributers, or purchasing … without advance written authorization from the customer." Thus, contrary to this Court's Order and Cipla's counsel's assertions, we have not been shown an example of the type of information Cipla is concerned about sharing. Indeed, as far as we can see, Cipla's counsel has not turned over any information that would be subject to an Attorney's Eyes Only designation.

The confidentiality provisions that are cut and pasted into the email appear to be standard fare and are not at issue here. They state that "any information of a Party relating to any designs, know-how, inventions, technical and non-technical data, ideas, uses, processes, … trade secrets, research and development activities, … or proprietary information" would be considered Confidential Information, and that "[s]ubject to applicable laws," and a period of time, they would not be disclosed without prior written consent of the other Party. The rest of the agreement is missing entirely and therefore, we cannot see its terms. These provisions are meaningless in a vacuum.

**Proposed Protective Order.**

The bottom line is that Byron has not sought, nor is Byron seeking any of the Confidential Information described above. Byron is simply seeking to determine what commission it is owed from Cipla's sales of bulk drug substances in the Exclusive Territory during the contract period. As the Court pointed out during oral argument, paragraph 5 of the Agency Agreement is at the heart of this case. It states:

> Byron will allow Cipla to solicit or accept any orders obtained directly from any end user in the exclusive territory without Byron's involvement provided Byron is covered for their commission. Cipla shall grant Byron a commission of 5% (Five percent) on FOB value of the bulk drug substance sold directly by Cipla to an end user in the exclusive territory. Cipla agrees to notify Byron of direct end user sales prior to transaction in order to avoid any possible conflict of interest.



Compl. Ex. A. Therefore, the very terms of the contract provide that this information would be shared with Byron (in order to avoid any possible conflict of interest).

As the Court noted on October 13, 2017, Byron is not seeking unit cost and neither customer names, types, total amount of product sold, and location of sale is subject to Attorneys Eyes Only. Good cause must be shown as to why an ordinary protective order permitting confidential treatment would not adequately protect the parties and this must be balanced against the interest of the plaintiff in gathering evidence to support its case. *Diaz v. Local 338 of the Retail, Wholesale Dept. Store Union, United Food and Commercial Workers*, 2014 WL 4384712, *4 (E.D.N.Y. Sept. 3, 2014). Good cause has not been shown here and Byron therefore respectfully requests that: (1) Cipla's supplemental request for a "Highly Confidential" or "Attorneys Eyes Only" designation be wholly denied; (2) Byron's proposed protective order, attached hereto as <u>Exhibit B</u>, be ordered as the operative protective order in this case; and (3) Cipla be ordered to begin producing documents in response to Byron's document requests without further delay.

Respectfully submitted,

Tomasita L. Sherer
DLA Piper LLP (US)
1251 Avenue of the Americas, 24th Floor
New York, NY 10020

*Attorneys for Plaintiff Byron Chemical Company, Inc.*